Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MACEO HARRIS,<br><br>　　Plaintiff,<br><br>vs.<br><br>TRANS UNION LLC, and<br>SYNCHRONY FINANCIAL,<br><br>　　Defendants. | **COMPLAINT**<br><br>*Jury Trial Demanded*<br><br>Case Number: 1:22-cv-00067-DBP<br>Judge: Dustin B. Pead |

### JURISDICTION AND VENUE

1.　This action arises from Defendant's violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681, *et seq.*

2.　Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 15 U.S.C. § 1681p which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.　Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and transactions giving rise to Plaintiff's claims occurred within this federal judicial district and because the Defendants' conduct business and reside in the State of Utah within the meaning of 28 U.S.C. § 1391(b) and (c).

4.　This Court has personal jurisdiction over the Defendants in this case because they have continuous and systematic contacts with the State of

Utah including, but not limited to, residing in Utah, regularly conducting business in Utah, enforcing consumer transactions in Utah, entering into agreements with Utah consumers, accessing credit reports of Utah consumers, contacting and communicating with consumers in Utah and others by telephone, email, Internet communications, and other instruments of interstate commerce, and by availing themselves of the benefits of the Utah legal and judicial systems.

## PARTIES

5.   The Plaintiff is a natural person who resides in Salt Lake City, Utah and was directly harmed by the Defendants' conduct and violations complained of herein.

6.   Defendant Trans Union LLC, (TransUnion) is a credit reporting agency as defined in 15 U.S.C. § 1681a(6). Its principal place of business is located at 555 West Adams Street, Chicago, IL 60661.

7.   Defendant Synchrony Financial (Synchrony) is a consumer financial services company headquartered in Stamford, Connecticut at 777 Long Ridge Road Stamford, Connecticut 06902.

8.   Each of the Defendants regularly conduct business in Utah, provide private financial information about Utah consumers, regularly provide other business and consumer solutions in Utah, and regularly assemble, evaluate, and disseminate consumer credit information to others in Utah.

9.   Each of the Defendants is a "consumer reporting agency" as defined by the FCRA since each "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

COMPLAINT

information on consumers for the purpose of furnishing consumer reports to third parties."[1]

10.    Defendant Synchrony Financial regularly accesses and disseminates consumer credit reports or information for profit.

11.    At all relevant times, each Defendant acted through duly authorized agents who they expressly authorized to access consumer credit reports.

12.    Plaintiff is a "consumer" as defined by the FCRA.[2]

13.    Defendants are each a "person" as defined by the FCRA.[3]

14.    The credit bureau Defendants are each a "consumer reporting agency" under the FCRA.[4]

## FACTUAL ALLEGATIONS

15.    On February 7, 2022, Plaintiff received a text alert notifying him that someone just accessed his credit reports.

16.    Plaintiff was in a Fred Meyer Jewelers when he received the notice and believes it was Fred Meyer Jewelers who initiated the pull using a service provided by Synchrony Financial.

17.    Plaintiff checked his reports with Credit Karma and confirmed that Defendants were reporting that he requested a line of credit with Synchrony Financial.

18.    It is materially inaccurate and false to report that Plaintiff requested credit from Synchrony Financial as reported by the Defendants because he did not make any such request.

---

[1] 15 U.S.C. § 1681a(f)
[2] 15 U.S.C. § 1681a(c)
[3] 15 U.S.C. § 1681a(b)
[4] 15 U.S.C. § 1681a(f)

COMPLAINT

19.     Plaintiff did not request credit from Synchrony Financial on February 7, 2022 or at any other time relevant to this case.

20.     Synchrony pulled Plaintiff's TransUnion report on February 7, 2022.

21.     Synchrony pulled Plaintiff's TransUnion report on behalf of Fred Meyer Jewelers.

22.     Synchrony provided information from Plaintiff's TransUnion report to Fred Meyer Jewelers.

23.     Neither Synchrony nor Fred Meyer Jewelers had a permissible purpose for pulling Plaintiff's credit reports.

24.     Reporting that Plaintiff requested credit from Synchrony creates a false impression of the Plaintiff's creditworthiness.

25.     Reporting that Plaintiff requested credit from Synchrony counts as a "hard inquiry" that lowers Plaintiff's credit score.

26.     Reporting that Plaintiff requested credit from Synchrony reduces Plaintiff's ability to obtain credit at favorable rates.

27.     Because the impermissible pull from Synchrony was reporting inaccurately and incompletely, Plaintiff send Transunion a dispute letter requesting a reinvestigation of that information.

28.     Plaintiff notified TransUnion of the dispute on February 8, 2022.

29.     Plaintiff pulled his credit reports again on April 13, 2022 and saw that the Defendants were still reporting the information incorrectly and inaccurately.

30.     Plaintiff notified TransUnion of the dispute again on April 14, 2022.

31.     Plaintiff notified TransUnion of the dispute again on April 28, 2022.

32.     Plaintiff notified Synchrony Financial of the dispute on April 29, 2022.

33.   Upon information and belief, TransUnion forwarded all of Plaintiff's disputes to Synchrony as required by 15 U.S.C. § 1681i(a)(2).

34.   Upon information and belief, each of Plaintiff's disputes letters were delivered to and reviewed by Synchrony Financial within a few days of the date they were sent.

35.   Despite receiving Plaintiff's dispute, none of the Defendants updated, corrected, modified, or deleted the information they were inaccurately and incompletely reporting about the Plaintiff.

36.   As of the date of this filing, none of the Defendants have ever notified Plaintiff that they have, or will, update, correct, modify, or delete the information they are inaccurately and incompletely reporting about the Plaintiff.

37.   On the contrary, TransUnion notified Plaintiff it would not correct the information or even investigate the matter on April 20, 2022.

38.   Upon information and belief, the form letter TransUnion sent to Plaintiff on April 20, 2022 is a standard form letter used by TransUnion to prevent consumers from effectively correcting errors in their credit reports.

39.   Upon information and belief, TransUnion sends the same form letter thousands, if not tens of thousands, of times every day.

40.   Because Plaintiff notified them properly, each Defendant knew or had reason to know the information they were reporting was incorrect and incomplete.

41.   Even before Plaintiff ever disputed the information both Defendants had a duty to report only information that is true, accurate, and correct.

42.     In order to pull Plaintiff's credit report Synchrony covenanted with TransUnion that it would only access credit reports and provide others information from those reports only when it had a permissible purpose for doing so.

43.     Synchrony never had any permissible purpose to pull Plaintiff's credit or provide information from Plaintiff's credit to others.

44.     Fred Meyer Jewelers never had any permissible purpose to pull Plaintiff's credit.

45.     Plaintiff never authorized Fred Meyer Jewelers or Synchrony to access his credit reports.

46.     Plaintiff never gave any written instructions or permission, never signed any agreement, and never agreed to obtain any extension of credit from Synchrony or Fred Meyer Jewelers.

47.     Indeed, a few weeks after the transaction, Fred Meyer Jewelers apologized and admitted to Plaintiff that it pulled Plaintiff's credit reports without a permissible purpose and under false pretenses.

48.     None of the Defendants had reasonable procedures in place to prevent Synchrony from pulling consumer credit reports or providing information from those reports to others without a permissible purpose.

49.     None of the Defendants have any reasonable procedures in place to prevent or correct reporting inaccurate or incomplete information about pulling someone's credit.

50.     In the alternative, Defendants disregarded their policies and procedures.

51.     Indeed, if any of the Defendants had reasonable procedures in place, it would have been impossible for Synchrony to access Plaintiff's credit

reports without a permissible purpose and the inaccurate information would have never been reported.

52. In the alternative and upon information and belief, Fred Meyer Jewelers' conduct was fraudulent and the Defendants relied on that conduct in allowing the access by Synchrony to occur.

53. Even so, Defendants both had, and violated, their duties to investigate the impermissible pull and delete the listing from Plaintiff's credit reports once Plaintiff made them aware of the issue.

54. Upon information and belief, none of the Defendants have taken any disciplinary action with regard to the impermissible pull or reporting inaccurate and false information about the Plaintiff.

55. At all relevant times each Defendant acted through their agents, servants, employees, principals, or others acting within the course and scope of their agency or employment.

56. At all relevant times the Defendants' conduct was intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the Plaintiff's rights.

57. At a minimum, and in the alternative, Defendants' actions were negligent.

58. As a result of Defendants' conduct, Plaintiff incurred attorney's fees and costs.

59. As a result of Defendant's conduct, Plaintiff incurred attorney's fees and costs and he suffered concrete and actual personal injury damages. Plaintiff's privacy was invaded, his credit score decreased, his risk of becoming a victim of identity theft increased, and his credit report was

unnecessarily and unlawfully disseminated to Fred Meyer Jewelers, its employees, its agents, its partners, and possibly others.

60.     Plaintiff's damages also include, *inter alia*; invasion of privacy, emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, headaches, sleeplessness, irritability, and other personal injuries and emotional distress.

COUNT I
**Fair Credit Reporting Act**
*(15 U.S.C. §§ 1681i and 1681e(b))*

61.     Plaintiff hereby incorporates all other allegations set forth in this Complaint.

62.     The Fair Credit Reporting Act requires credit reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of information they provide in consumer credit reports.[5]

63.     The Fair Credit Reporting Act provides that if the accuracy or completeness of any information is disputed by a consumer, the credit reporting agencies are required to conduct a reasonable investigation to verify the accuracy of the information or delete the information within 30 days of receiving notice of the dispute.[6]

64.     The FCRA also requires the credit reporting agencies to provide notice of the dispute, and all other relevant information it received, to the furnisher of the information within five days.[7]

_____

[5]  15 U.S.C. § 1681e(b)
[6]  15 U.S.C. § 1681i(a)(5)
[7]  15 U.S.C. § 1681i(a)(2)

COMPLAINT

65.    The Defendants violated the FCRA by failing to employ and follow reasonable procedures to ensure maximum possible accuracy of the information they reported about Plaintiff.[8]

66.    The Defendants violated the FCRA by failing to respond to Plaintiff's dispute letters within the 30 day statutory deadline.

67.    The Defendants violated the FCRA by failing to conduct a reasonable investigation of the disputed information.

68.    Upon information and belief, TransUnion violated the FCRA by failing to forward Plaintiff's disputes to Synchrony.

69.    In the alternative and upon information and belief, Synchrony violated the FCRA by ignoring the Plaintiff's dispute.

70.    The Defendants violated the FCRA by failing to consider all relevant information submitted by the Plaintiff.

71.    The Defendants violated the FCRA by failing to correct, modify, or delete the inaccurate or incomplete information they were reporting about Plaintiff.

72.    The Defendants violated the FCRA by failing to report the inaccurate information was disputed.

73.    The Defendants violated the FCRA by allowing a third party to access Plaintiff's credit reports without a permissible purpose.

74.    As a direct and proximate result of the Defendants' violations of the FCRA, Plaintiff suffered the concrete actual damages as described herein.

75.    Plaintiff therefore requests this Court for an award against the Defendants jointly and severally for an award of his statutory damages, actual

---

[8]  15 U.S.C. § 1681e(b)

damages, punitive damages, and his attorney's fees and costs pursuant to
15 U.S.C. §§ 1681n and 1681o.

COUNT II
**Fair Credit Reporting Act**
*(15 U.S.C. § 1681s-2(b))*

76.     Plaintiff hereby incorporates all other allegations set forth herein.

77.     The Fair Credit Reporting Act prohibits any person from reporting
        information it knows or has reason to know is false.[9]

78.     The Fair Credit Reporting Act requires a furnisher of information to
        correct and update information that is not complete or accurate.[10]

79.     If a consumer disputes the accuracy of the information a furnisher is
        reporting, the Fair Credit Reporting Act requires that furnisher to notify
        the credit bureaus of the dispute if the furnisher continues reporting the
        information.[11]

80.     If information is disputed by a consumer, the furnisher is also required to
        conduct an investigation, review all relevant information, complete the
        investigation and report the results of the investigation to the credit
        reporting agency, and, if the information is incomplete or inaccurate, to
        correct, modify, or delete the information within 30 days.[12]

81.     If the furnisher is notified the information it is reporting resulted from
        identity theft or similar fraud, that furnisher is required to permanently
        block the information from reporting.[13]

---

[9]   15 U.S.C. § 1681s-2(a)(1)
[10]  15 U.S.C. § 1681s-2(a)(2)
[11]  15 U.S.C. § 1681s-2(a)(3)
[12]  15 U.S.C. §§ 1681s-2(a)(8)(E) and (a)(9)(b)
[13]  15U.S.C. § 1681s-2(a)(6)

— 10 —
COMPLAINT

82.   Synchrony provided inaccurate and incomplete information about the Plaintiff to TransUnion.

83.   TransUnion then reported inaccurate and incomplete information about the Plaintiff to others.

84.   Even after Plaintiff disputed the veracity of the information, Synchrony never verified or properly investigated the information about Plaintiff it provided to TransUnion.

85.   Synchrony also did not modify, delete, correct, or block the information it reported about Plaintiff.

86.   Synchrony violated section 1681s-2(b) by willfully and negligently:

   86.1.   Failing to conduct a reasonable investigation of the disputed inaccurate information;

   86.2.   Failing to properly and thoroughly review all relevant information;

   86.3.   Failing to report that the inaccurate or incomplete information was disputed by the Plaintiff;

   86.4.   Failing to report the results of its investigation of the Plaintiff's dispute;

   86.5.   Failing to participate, investigate, and comply with TransUnion's investigation obligations;

   86.6.   Failing to correct, update, delete, modify, or block the incorrect or incomplete information; and

   86.7.   Continuing to furnish and report inaccurate or incomplete information about the Plaintiff;

87.    Synchrony's conduct in reporting, failing to investigate, and failing to correct or delete the incomplete or inaccurate information was willful and negligent.

88.    In the alternative, Synchrony's conduct in reporting, failing to investigate, and failing to correct or delete the incomplete or inaccurate information was malicious and in gross disregard for Plaintiff's rights.

89.    Plaintiff therefore requests this Court for an award against Synchrony Financial for an award of his statutory damages, actual damages, punitive damages, and his attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against each of the Defendants as follows:

90.    For an award of statutory damages of between $100 and $1,000 for each and every violation as provided by the FCRA.

91.    For an award of actual damages as provided by the FCRA.

92.    For an award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

93.    For an award of Plaintiff's attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

94.    For pre-judgment and post judgment interest at the legal rates;

95.    For leave to amend this Complaint as the interests of justice may allow; and

96.    For such other and further additional relief as may be determined to be appropriate and as the Court may find just and proper.

JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.


DATED 5/19/2022                                    Eric Stephenson
                                                   *Attorney for the Plaintiff*

COMPLAINT